USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______
DATE FILED: 3/2/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LUTIN INVESTMENTS, LTD.,

Petitioner/Plaintiff,

- against -

NIGERIAN NATIONAL PETROLEUM CORPORATION,

Respondent/Defendant.

---

**OPINION AND ORDER**

12-cv-5191 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

On November 17, 2014, the parties in this action entered into a settlement agreement (the "Agreement") disposing of all claims in this action. Pursuant to that Agreement, on December 16, 2014, this Court entered an Order of Dismissal (the "December 14 Order") closing the case. Petitioner/plaintiff Lutin Investments, Ltd. ("Lutin") now moves to vacate the December 14 Order pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, arguing that its representative entered into the Agreement without Lutin's authorization and under duress from respondent/defendant Nigerian National Petroleum Corporation ("NNPC"), and the Nigerian government. For the following reasons,

petitioner/plaintiff's motion is DENIED.

# I. BACKGROUND

This case was settled and voluntarily dismissed before any discovery or motion practice; therefore, the only factual record this Court has to reference in resolving this motion is that presented in the affidavits submitted by the parties in connection with this motion. These affidavits present conflicting views of events. This is particularly troubling in the case of Mr. Leno Adesanya, CEO and director of Lutin, who submitted two inconsistent affidavits in support of this motion. Mr. Adesanya's first affidavit is directly undercut by documentary evidence produced by NNPC in opposition, and his second affidavit — submitted along with Lutin's reply brief — abruptly and materially changes Mr. Adesanya's story in response to this documentary evidence. Because the persuasive power of Lutin's proffered evidence is central to this Court's Rule 60 inquiry, I present these incompatible affidavits sequentially.

## A. General Background

### 1. The Original Dispute

Lutin is a corporation organized under the laws of the British Virgin Islands, with its registered office in Geneva, Switzerland.[1] Lutin is in the business

[1] *See* 12/16/15 Declaration of Leno Adesanya in Support of Lutin's Motion to Vacate the Dismissal Order ¶ 3.

of supplying ocean vessels with equipment for the storage of petroleum producs and related activities.[2] Mr. Adesanya owns fifty percent of Lutin's shares, and is both CEO and a director of the company.[3] Various members of Mr. Adesanya's family own the remaining fifty percent of Lutin's shares.[4]

NNPC is a Nigerian business entity wholly owned by the Nigerian government.[5] In 1993, Lutin and NNPC submitted a business dispute that had arisen between them to binding international arbitration. In May 2007, the arbitrator awarded Lutin damages against NNPC in the amount of $55,281,109, plus 10% compound interest; £20,480, plus 10% compound interest, and N.4,692,930, plus 21% compound interest.[6] All interest obligations began to accrue on July 7, 1993.[7] Lutin sought and gained recognition of the full arbitration award before the French Tribunal de Grande Instance on July 6, 2007.[8] NNPC appealed to the Paris Court of Appeal, which affirmed the Tribunal de Grande

---

2 *See id.* ¶ 4.

3 *See id.* ¶¶ 1, 5.

4 *See id.* ¶ 5.

5 *See id.* ¶ 9.

6 *See id.* ¶ 11.

7 *See id.*

8 *See id.* ¶ 13.

Instance on December 2, 2014.[9]

**2. The Instant Action**

On July 3, 2012, Lutin commenced this action seeking recognition of the French judgment pursuant to Article 53 of the New York Civil Practice Law and Rules. During the pendency of this action, the parties engaged in settlement discussions, and ultimately entered into the Agreement underlying this motion on November 17, 2014.

**B. Petitioner/Plaintiff's Moving Affidavit**

In July 2006, Lenoil Holdings Ltd. ("Lenoil"), another corporation owned in part by Mr. Adesanya, borrowed N.322,038,978.91 (approximately $2.3 million) from Sterling Bank (Nigeria) PLC through a series of loans, accruing interest at an average rate of 30% per annum.[10] These loans were acquired by Asset Management Corporation of Nigeria ("AMCON"), a state-run and state-owned corporation.[11] The government of Nigeria, both through official channels and through AMCON, pressured Mr. Adesanya to settle his claims against NNPC in order to settle his debt with AMCON. This pressure included claims of fraud

---

9 *See id.*

10 *See id.*

11 *See id.* ¶ 15.

(which Mr. Adesanya demonstrated were false), threats to foreclose on Mr. Adesanya's Nigerian properties, and threats of "dire consequences" if he did not settle his pending litigation with NNPC.[12]

On November 17, 2014, NNPC's corporate secretary, Mr. Ikechukwu Oguine, spoke with Mr. Adesanya regarding a $277,000,000 payment from NNPC to Lutin approved by then-President Goodluck Jonathan.[13] Mr. Oguine indicated that while he had authorization to make this payment, he was being pressured by the Nigerian government to obtain a significantly lower settlement from Lutin.[14] Mr. Adesanya and his personal assistant Mr. Jide Sotinrin met with Mr. Oguine at the NNPC offices later that day, where Mr. Adesanya told Mr. Oguine both that Lutin would not accept a lower settlement and that he lacked the authority to sign such an agreement on behalf of Lutin.[15]

Notwithstanding this explicit statement, Mr. Oguine demanded that Mr. Adesanya and Mr. Sotinrin execute the Lutin board resolution authorizing the settlement, and the Agreement itself.[16] In order to avoid the "dire consequences"

---

12 *See id.* ¶¶ 17-24.

13 *See id.* ¶ 25.

14 *See id.*

15 *See id.* ¶¶ 26-27.

16 *See id.* ¶ 28.

threatened by AMCON, and without any authority to do so, Mr. Adesanya executed both documents.[17] Mr. Sotinrin served as countersignatory.[18] Three days later, on November 20, 2015, NNPC paid Lutin $55,281,000.00, as per the terms of the Agreement.[19]

**C. Respondent/Defendant's Affidavit in Opposition**

On November 10, 2014, Mr. Oguine received a letter dated November 6, 2014, from Mr. Adesanya in his capacity as CEO of Lutin.[20] The letter recounted a meeting between NNPC and Lutin that took place on October 13, 2014, where the parties discussed a possible settlement of the dispute.[21] Mr. Adesanya "restate[d] [Lutin's] desire to have this matter resolved amicably," and stressed Lutin's "interest[] in working with NNPC to settle this matter once and for all."[22]

---

17 *See id.* ¶¶ 28-29.

18 *See id.* ¶ 28.

19 *See id.* ¶ 34.

20 *See* 1/22/16 Declaration of Ikechukwu Oguine in Opposition to Petitioner's Motion to Vacate Dismissal Order ("Oguine Decl.") ¶ 4.

21 *See id.* ¶ 5.

22 *Id.*

Mr. Oguine replied by letter on November 13, 2014.[23] In this letter, Mr. Oguine inquired as to the status of the parties' draft settlement, which Lutin had written and NNPC had revised.[24] Mr. Oguine reiterated that NNPC would be willing to settle with Lutin for $55,281,000.[25]

Mr. Adesanya replied by letter the next day, advising that Lutin would accept $55,281,000 "in full and final discharge of NNPC's liabilities to [Lutin] in the ongoing litigation between [Lutin and NNPC] in the Nigerian, French, and American courts . . . ."[26] Attached to the November 14 letter was an executed board resolution from Lutin authorizing the settlement.[27] Mr. Oguine has no recollection of speaking with Mr. Adesanya on the phone on November 17, 2014, and roundly rejects Mr. Adesanya's assertions that Mr. Oguine said he was being pressured to settle the matter by the Nigerian government.[28]

On November 17, 2014, Mr. Adesanya came to the NNPC offices to

---

23 *See id.* ¶ 6.

24 *See id.*

25 *See id.* ¶ 7.

26 11/14/14 Letter from Adesanya to Oguine, Ex. C to Oguine Decl.

27 *See id.*

28 *See* Oguine Decl. ¶ 9.

meet with Mr. Oguine.[29] He was accompanied by Mr. Sotinrin, who Mr. Oguine was led to believe served as Lutin's corporate secretary.[30] Mr. Adesanya brought Lutin's corporate seal to the meeting, as well as a further revised draft settlement agreement.[31] The final Agreement was prepared and signed that day.

**D. Petitioner/Plaintiff's Reply Affidavits**

Mr. Adesanya submitted a second affidavit with Lutin's reply brief, in which he sought to explain the documents produced by NNPC in Mr. Oguine's affidavit. He admitted to having provided the November 14, 2014 letter agreeing to settle the dispute, but claimed that it was made without Lutin's authorization.[32] He also admitted that he provided an executed board resolution to Mr. Oguine along with the November 14, 2014 letter — not, as he had previously testified, executing the board resolution under pressure from Mr. Oguine at the November 17 meeting.[33] Mr. Adesanya testified that he provided these falsified documents

---

29 *See id.* ¶ 10.

30 *See id.*

31 *See id.* ¶ 11.

32 *See* 2/4/16 Reply Declaration of Leno Adesanya in Further Support of Lutin's Motion to Vacate the Dismissal Order ¶ 8.

33 *See id.*

due to pressure from the Nigerian government.[34]

Lutin also submitted an affidavit by Mr. Adesanya's wife, Ibironke Adesanya. Mrs. Adesanya is also a director of Lutin.[35] Mrs. Adesanya testified that she learned her husband signed the Agreement a few days after November 17, 2014.[36] She attached two letters to the affidavit, dated November 24, 2014, and December 22, 2014, written by her to President Goodluck Jonathan.[37] In both of these letters, Mrs. Adesanya denied that her husband had the authority to enter into the Agreement and sought to renegotiate its terms.[38]

## II. LEGAL STANDARD

### A. Standard Under Rule 60(b)

"Rule 60(b) was intended to preserve the delicate balance between the sanctity of final judgments and the incessant command of the court's conscience that justice be done in light of all the facts."[39] Rule 60(b) does not provide a party

---

34 *See id.* ¶ 10.

35 *See* 2/4/16 Declaration of Ibironke Adesanya in Support of Lutin's Motion to Vacate the Dismissal Order ¶ 1.

36 *See id.* ¶ 3.

37 *See id.* ¶¶ 4-5.

38 *See id.*

39 *Smalls v. United States,* 471 F.3d 186, 191 (D.C. Cir. 2006) (quotation marks, ellipses, and citation omitted). *Accord Nemaizer v. Baker*, 793 F.2d 58, 61

with the opportunity to relitigate the merits of a case in an attempt to win a point already "carefully analyzed and justifiably disposed."[40] Accordingly, motions for relief from judgment under Rule 60(b) are generally disfavored in the Second Circuit.[41]

Rule 60(b) provides that a district court may relieve a party from a final judgment or order in five enumerated circumstances and, according to a sixth subparagraph, for "any other reason that justifies relief."[42] If any other subparagraph of Rule 60(b) is applicable, Rule 60(b)(6) will not apply.[43] The Second Circuit has held that "[m]otions under rule 60(b) are addressed to the sound

---

(2d Cir. 1986) ("Properly applied, Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments. In other words, it should be broadly construed to do substantial justice, yet final judgments should not be lightly reopened.") (quotation marks and citations omitted).

40 *In re Bulk Oil (USA) Inc.*, No. 93 Civ. 4492, 2007 WL 1121739, at *10 (S.D.N.Y. Apr. 11, 2007) (stating that a court should not "reconsider issues already examined simply because [a party] is dissatisfied with the outcome of [its] case. To do otherwise would be a waste of judicial resources.") (quotation marks and citation omitted).

41 *See Empresa Cubana Del Tabaco v. General Cigar Co.*, 385 Fed. App'x 29, 31 (2d Cir. 2010) ("We have cautioned, however, that Rule 60(b) motions are disfavored . . . "); *Simone v. Prudential Ins. Co. of Am.*, 164 Fed. App'x 39, 40 (2d Cir. 2006); *United States v. International Bd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001).

42 Fed. R. Civ. P. 60(b)(6).

43 *See Nemaizer*, 793 F.2d at 63.

discretion of the district court and are generally granted only upon a showing of exceptional circumstances."[44] In fact, "'[i]t is well established . . . that a proper case for Rule 60(b)(6) relief is only one of extraordinary circumstances, or extreme hardship.'"[45] The Second Circuit has set forth a three-prong test in order for a Rule 60(b) motion to succeed: (1) there must be "highly convincing" evidence in support of the motion; (2) the moving party must show good cause for failing to act sooner; and (3) the moving party must show that granting the motion will not impose an undue hardship on any party.[46]

In addition, the moving party's burden to obtain Rule 60(b) relief is greater "[w]hen the parties submit to an agreed-upon disposition instead of seeking a resolution on the merits . . . than if one party proceeded to trial, lost, and failed to appeal."[47] "The legal consequences of a stipulation incorporated in a court order may not be undone simply because, with the benefit of hindsight, stipulating turns

---

44 *Mendell in behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990) (citing *Nemaizer*, 793 F.2d at 61). *Accord Paddington Partners v. Bouchard*, 34 F.3d 1132, 1142 (2d Cir. 1994).

45 *Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004) (quoting *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977) (quotation marks and citations omitted)).

46 *Kotlicky v. United States Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987).

47 *Nemaizer*, 793 F.2d at 63.

out to have been an unfortunate tactic."[48]

### B. Standard Under Rule 60(b)(3)

Rule 60(b)(3) provides for relief from judgment where there is "fraud . . . , misrepresentation, or misconduct by an opposing party." It is well established that "a Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits."[49] According to the Second Circuit, fraud upon the court "is limited to fraud which seriously affects the integrity of the normal process of adjudication" and embraces "'only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases.'"[50] Examples of conduct that meet the definition of fraud upon the court include bribery of a judge, jury tampering, or hiring an attorney for the sole

---

48 *Id.* at 59-60.

49 *Fleming v. New York Univ.*, 865 F.2d 478, 484 (2d Cir. 1989). *Accord King v. First Am. Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002) ("Fraud upon the court must be established by clear and convincing evidence.").

50 *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1325 (2d Cir. 1995) (quoting *Kupferman v. Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972) (internal quotation marks omitted)).

purpose of improperly influencing a judge.[51]

### C. Standard Under Rule 60(b)(5)

"A party may move for relief pursuant to Rule 60(b)(5) 'if changed circumstances make it no longer equitable that the judgment should have prospective application.'"[52] Rule 60(b)(5) relief often arises in the context of "institutional reform litigation," in which prospective reforms embodied in judgments are reviewed for inequitable application because of changed circumstances.[53]

## III. DISCUSSION

In its opening brief, Lutin cites to three subsections of Rule 60 under which it argues it is entitled to relief: 60(b)(3), providing for relief in instances of fraud; 60(b)(5), providing for relief when a judgment is "no longer equitable"; and 60(b)(6), the catch-all provision of the rule providing for relief for "any other reason" this Court deems justified. Lutin does not, however, direct any specific

---

51 *See United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002).

52 *Lee v. Marvel Enters.*, 765 F. Supp. 2d 440, 451 (S.D.N.Y. 2011) (quoting *Project Strategies Corp. v. National Commc'ns Corp.*, No. 94 Civ. 4925, 1995 WL 669655, at *2 (E.D.N.Y. Oct. 27, 1995)).

53 *See, e.g.*, *Horne v. Flores*, 557 U.S. 433 (2009) (noting that injunctions tend to remain in force for long periods of time, sometimes warranting reexamination to ensure equitable application).

arguments towards Rules 60(b)(3) and 60(b)(5); instead, it argues this Court should

vacate the December 14 Opinion because (a) the Agreement was entered into

without authorization and (b) the Agreement was the product of duress.  These

arguments are both directed to Rule 60(b)(6).[54]

        Lutin has failed the first prong of the test for sustaining a Rule

60(b)(6) motion — the evidence it has provided this Court in support of its motion

is the inverse of "highly convincing."  Indeed, the weight of the record leads this

Court to believe that Mr. Oguine's version of events — documented by numerous

pieces of correspondence and corporate documents signed by Mr. Adesanya — is

the version of events closest to the truth.  Additionally, Mr. Adesanya's abrupt

about-face in his second affidavit, admitting both that the board resolution

authorizing the settlement had been executed well before November 17, 2014, and

that he had sent a letter confirming Lutin's willingness to accept a settlement

matching the Agreement's terms, greatly reduces the weight I can reasonably

---

[54]    Rules 60(b)(3) and 60(b)(5), furthermore, are inapplicable to this case. To prevail under Rule 60(b)(3), a party must establish that the "conduct complained of prevented the moving party from fully and fairly presenting [its] case."  *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004).  Lutin makes no such argument here.  Rule 60(b)(5) is directed towards long-running judgments — especially judgments for injunctive relief — that have been rendered inequitable by an intervening change of circumstance.  Lutin's settlement with NNPC does not fall within the ambit of that subsection of the Rule.

ascribe to his testimony.

To be clear, Lutin's position is not entirely without support. This Court notes the two letters sent by Mrs. Adesanya to President Goodluck Jonathan in late 2014, in which she clearly expresses her view that Mr. Adesanya entered into the Agreement without proper authority. These two letters by themselves, however, must be balanced against her husband's inconsistent statements, and the documents appearing to grant Mr. Adesanya authority to enter into a settlement with NNPC. While it is possible — unlikely, but possible — that Mr. Adesanya disclaimed any actual authority in person to Mr. Oguine on November 17, 2014, and while it is possible — unlikely, but possible — that he was under duress when executing the Agreement, that mere possibility does not rise to the level of highly convincing evidence required in this Circuit to grant a Rule 60 motion. This is especially so given the heightened burden a movant must meet when seeking to unwind a settlement agreement.[55] Given Lutin's failure to meet its evidentiary burden in support of the motion, I need not reach the second and third prongs of the Second Circuit's test for relief under Rule 60.[56] Lutin's motion must fail.

---

55 *See Nemaizer*, 793 F.2d at 63.

56 Were this Court to reach the second and third prongs of the test, this result would only be confirmed — Lutin has demonstrated no good cause for its waiting close to a year after entering into the Agreement to bring this motion, and setting aside the judgment would cause an undue hardship on NNPC.

## IV. CONCLUSION

For the foregoing reasons, petitioner/plaintiff's motion is DENIED.

The Clerk of the Court is directed to close this motion (Dkt. No. 34).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
March 2, 2016

**- Appearances -**

**For Petitioner/Plaintiff:**

George F. Hritz, Esq.
Kaplan Fox & Kilsheimer, LLP
850 Third Avenue
New York, NY 10022
(212) 687-1980

**For Respondent/Defendant:**

Charles D. Schmerler, Esq.
Sarah E. O'Connell, Esq.
Norton Rose Fulbright US LLP
666 Fifth Avenue
New York, NY 10103
(212) 318-3021